UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JAMES J. KENNEY,

    Plaintiff,

v.                                                C.A. No. 09-349 ML

OFFICER JASON T. HEAD, OFFICER
STEPHEN S. HEAD and LAURA SITRIN, in
her capacity as Finance Director of the City of
Newport,

    Defendants.

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' motion for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

Plaintiff makes claims against two Newport police officers as well as the City of Newport ("City"). As best as this Court can discern,[1] Plaintiff makes claims against the individual officers for: false arrest and improper seizure, excessive force, conspiracy, assault and battery, malicious prosecution, and false imprisonment. As to his claims against the City, Plaintiff alleges that it maintained an unlawful detention policy, failed to train its police officers, and that it negligently hired its police officers.

Defendants have moved for summary judgment on the ground that there was probable cause for the arrest, thereby absolving the individual officers of any liability. In the alternative,

---

[1] The complaint is not a model of clarity. The Court therefore relies on the parties' motion papers to limn the claims made in each count.

1

Defendants argue that, in the absence of probable cause, the officers are entitled to summary judgment based on qualified immunity. Additionally, Defendants argue that the City is not liable for any of the alleged misconduct of the officers because the City itself did not engage in any wrongful conduct.

### I. Facts

Plaintiff, James Kenney ("Kenney" or "Plaintiff"), and his friend, Brian Bollinger ("Bollinger"), left a club/bar near Thames Street in downtown Newport, Rhode Island, in the early morning hours of August 12, 2006. The area was bustling at 1:30 am. Roughly 100 people were in the general vicinity. In addition to the revelers, Newport Police Officers Stephen Head and his brother Jason Head were in the area. The officers were both on duty but they were not partnered together that night. Stephen Head and his partner were on bicycle patrol while Jason Head and his partner were on foot patrol.

At some point, Stephen Head left his partner to investigate a situation involving a motorcyclist who was creating a disturbance on Thames Street. Stephen Head initiated contact with the motorcyclist and then, soon after, Jason Head left his partner and arrived at the scene. Barker Dep. 10:16-11:16. Ultimately, Stephen Head issued the motorcyclist a parking ticket for obstructing traffic. S. Head Dep. 20:2. Kenney and Bollinger witnessed the issuance of the ticket to the motorcyclist. By their account, the officers behaved in an unprofessional manner, made threatening remarks, and used harsh expletives. Kenney Dep. 29:1-6, 30:19; Bollinger Dep. 16:14. Stephen Head recalls only interacting "angrily" with the motorcyclist. S. Head Dep. 12:24.

After the issuance of the ticket, Kenney and Bollinger started chatting with the motorcyclist and his female passenger. Kenney claims that the conversation was initiated by the motorcyclist but that he also became involved out of concern for the female passenger whom he believed was having a panic attack. Kenney Dep. 32:6, 32:22. The parties agree that Kenney and Bollinger made comments to the motorcyclist disapproving of the officers' conduct. Stephen Head and Jason Head were still nearby and overheard these remarks. The officers then returned to the scene of the motorcycle incident and began questioning Kenney and Bollinger. Kenney Dep. 38:1-6.

The officers initially asked Kenney and Bollinger why they were talking to the motorcyclist. Soon after, one of the officers[2] detained Bollinger and notified dispatch that they were handling a "disorderly." S. Head Dep. 29:3-23. The parties dispute whether the officers initially told Kenney and Bollinger to leave the area before detaining Bollinger. The parties also dispute whether Kenney and Bollinger were blocking the path of the motorcycle, thereby causing a disruption on the street warranting either detainment or arrest.

While Bollinger was detained, Kenney began asking the officers what was happening. Kenney 39:12-24. The parties agree that the officers asked Kenney some questions as to his presence at the scene of the ticketing incident and then told him to back away from the area. The parties ultimately dispute, however, whether Kenney complied with these commands.

---

[2] It is unclear as to which officer detained Bollinger and which officer arrested Kenney. According to Kenney, it was Jason Head who arrested him, meaning that Stephen Head was detaining Bollinger. Kenney Dep. 47:20-23. Jason Head, however, states that Stephen Head arrested Kenney and that he, Jason Head, detained Bollinger. J. Head Dep. 54-56. For the purposes of this Order, this Court casts disputed facts in the light most favorable to the nonmoving party and thus refers to the arresting officer as Jason Head without deciding which officer actually made the arrest of Plaintiff.

3

According to Kenney, he initially backed up as instructed but then stopped at some point to further witness Bollinger's detention. Kenney Dep. 39:20-23. While watching the detention, Kenney claims that he was further questioned by the officers as to his interaction with the motorcyclist. Kenney Dep. 42:6-13. Kenney acknowledges that he was then told to leave for a second time. Kenney Dep. 44:5-7. Initially, he remained stationary and asked whether Bollinger was being arrested. Kenney Dep. 42:21. Kenney then claims that he started leaving while simultaneously questioning the officers as to why they were detaining Bollinger. Kenney Dep. 44:14.

Kenney asserts that Jason Head moved towards him to effect his arrest as he (Kenney) was in the process of backing away from the scene. Kenney Dep. 44:14-24. According to Kenney, he had announced that he was leaving and was approximately thirty feet from where Bollinger was being detained when Jason Head grabbed his arm and handcuffed him. Kenney Dep. 46:21-47:23. At the time of his arrest, Kenney was recovering from shoulder surgery and he claims that the handcuffing caused him injury. The incident culminated in Kenney being arrested on charges that he was obstructing a police officer in violation of R.I. Gen. Laws. § 11-32-1. Bollinger was released at the scene.

## II. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).[3] "A fact is material if its resolution would affect the outcome of the suit . . . and the issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cianbro Corp. v. George H. Dean, Inc., 596 F.3d 10, 14 (1st Cir. 2010) (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986)). Factual disputes are viewed in the light most favorable to the nonmoving party. See Cianbro, 596 F.3d at 14. A court may render partial summary judgment when material facts are not genuinely at issue on only part of the action. See Flanders & Medeiros, Inc. v. Bogosian, 65 F.3d 198, 204 (1st cir. 1995) (citing Fed. R. Civ. P. 56(d)).

### III. Discussion

A. Municipal Liability - § 1983 Claims

Under Section 1983, a plaintiff must establish two elements to succeed on a claim against a municipality: 1) the plaintiff's harm must be caused by a constitutional violation, and 2) the municipality must itself be responsible for the injury. See Young v. City of Providence ex rel Napolitano, 404 F.3d 4, 26 (1st Cir. 2005) (citing Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992)). Municipalities are not liable for the actions of municipal employees on a theory of respondeat superior. See Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 769 (1st Cir. 2010) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)); see also Ensey v. Culhane, 727 A.2d 687, 690 (R.I. 1999) (stating that municipalities are only liable for the conduct of subordinates where the alleged unlawful conduct is executed pursuant to a policy of

---

[3] The Federal Rules of Civil Procedure were amended as of December 1, 2010, but this Court applies the Rules in effect as of the date of the filing of this motion, August 13, 2010.

the municipality). Municipalities are only liable where their employees act pursuant to an official policy or custom. See Hilchey v. City of Haverhill, 537 F.Supp.2d 255, 262 (D.Mass. 2008) (citing Monell, 436 U.S. 658). It is the plaintiff's burden to demonstrate that a particular police action is the result of a city policy. See Wilson v. City of Boston, 421 F.3d 45, 59-60 (1st Cir. 2005).

### i. Count VI: Unlawful Detention Policy

Kenney alleges that the City acted with reckless and callous disregard for his rights. Complaint ¶ 20. He claims that such disregard stemmed from a "City of Newport . . . policy with regard to the detention of accused individuals . . . to deprive those individuals of treatment [sic] while in custody." Complaint ¶ 20. In order to establish municipal liability under § 1983, "the custom or practice [must be] so well-settled and widespread that the policy making officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end it." Walden v. City of Providence, 596 F.3d 38, 57-58 (1st Cir. 2010) (quoting Bisbal-Ramos v. City of Mayagüez, 467 F.3d 16, 24 (1st Cir. 2006)). Kenney has made no such showing in this case.

Kenney has not submitted admissible evidence that would support a finding of a City policy or custom of disregarding the rights of accused individuals. Kenney's accusations focus solely upon the conduct of the individual police officers. He argues that "[t]he plaintiff and Bollinger were deemed to be irritants who might have exposed Stephen Head's unprofessional conduct." Pl.'s Objection 18. Kenney alleges, without providing any factual support for his assertion, that he was arrested because the officers feared they could be subject to internal

discipline for their handling of the motorcyclist situation. Pl.'s Objection 18. Nothing in the record, however, establishes that the officers' conduct was encouraged or tolerated by a City policy, and, therefore, no reasonable jury could find municipal liability on this record. Therefore, summary judgment on Count VI is appropriate.

### ii. Count VII: Failure to Train

Kenney alleges that the City of Newport failed to properly train the officers. Failure to train police officers can establish municipal liability under § 1983 where "the city's failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Whitfield v. Melendez-Rivera, 431 F.3d 1, 9-10 (1st Cir. 2005) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "[T]he fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 27 (1st Cir. 2005) (citing Canton, 489 U.S. at 391). Deliberate indifference exists if the City "disregarded a known or obvious risk of serious harm." See Young, 404 F.3d at 28.

Kenny has failed to present admissible evidence that would support a finding that the City failed to properly train its officers. Kenney has not pointed to any "pattern of knowledge" that would demonstrate that the City was aware that its police officers were arresting individuals without probable cause. Young, 404 F.3d at 28 (finding that some evidence of a pattern of knowledge could permit a reasonable jury to conclude there was a failure to train).

In some cases, a plaintiff may not need to show a pattern of previous constitutional violations where, for example, the acts in question are of such an egregious nature that an

7

obvious failure to train is readily apparent. See id. Here, however, Plaintiff has pointed to no evidence that would establish that the City failed to train its police officers on avoiding making improper arrests. Accordingly, Count VII must be dismissed.

### B. Municipal Liability: State Law Negligent Hiring Claim

Under Rhode Island law, an employer may be held liable for the wrongful acts of an employee when the employer fails to "exercise reasonable care in selecting a person who the employer knew or should have known was unfit or incompetent for the employment, thereby exposing third parties to an unreasonable risk of harm." Welsh Mfg., Div. of Textron, Inc. v. Pinkerton's Inc., 474 A.2d 436, 440 (R.I. 1984). Viewing the evidence in the light most favorable to Kenney, there is simply no evidence that the City was aware or should have been aware that the officers involved in this case were unfit or incompetent. Kenney's complaint and motion papers focus exclusively on the conduct of the officers with regard to this one particular incident. Nothing suggests that the City was aware of any incompetency or that it failed to act reasonably to correct for any such incompetency. Defendants' motion for summary judgment is therefore granted on the Count VII state law negligent hiring claim.

### C. Claims Against the Individual Officers

Although Defendants make a plausible argument in favor of dismissal of Plaintiff's claims against the individual officers, the Court finds that the facts in dispute make a grant of judgment in their favor premature at this point. Accordingly, Defendants' motion for summary judgment as it relates to the individual officers is DENIED.

8

## IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

SO ORDERED

*/s/ Mary M. Lisi*
Mary M. Lisi
United States District Judge
January 13, 2011